## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN BLADES and ANTWAN BUCHANAN, *individually and on behalf of all others similarly situated*, | |
| c/o The Public Defender Service for the District of Columbia<br>633 Indiana Avenue, NW<br>Washington, D.C. 20004 | |
| Plaintiffs-Petitioners, | |
| v. | |
| MERRICK GARLAND, *in his official capacity as* Attorney General | No. |
| U.S. Department of Justice<br>950 Pennsylvania Ave, NW<br>Washington, D.C. 20530 | |
| FEDERAL BUREAU OF PRISONS and MICHAEL CARVAJAL, *in his official capacity as* Director of the Federal Bureau of Prisons, *et al.*, | |
| 320 First Street, NW<br>Washington, D.C. 20534 | |
| Defendants-Respondents. | |

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Jonathan Blades and Antwan Buchanan, on behalf of a class of similarly situated

people — all people who are serving or will be serving sentences for District of Columbia code

offenses who were sentenced by the Superior Court of the District of Columbia and who are held in

the custody of the Federal Bureau of Prisons — allege as follows:

## PRELIMINARY STATEMENT

1.      The Federal Bureau of Prisons ("BOP") has established two separate systems to calculate its residents' "criminal history scores," a number that is used to determine Plaintiffs' security classification, i.e. the security level of the prisons in which Plaintiffs are placed, and their eligibility for home confinement and release to a halfway house.

2.      These two, separate criminal history scoring systems apply arbitrarily and unequally to BOP residents based on the court from which they were sentenced — federal district courts or another court system, such as the Superior Court for the District of Columbia, other state courts, or military tribunals.  This action specifically challenges the application of a different criminal history scoring rule to the group of individuals that are sentenced by the Superior Court for the District of Columbia and transferred to BOP custody to serve their sentences, i.e. Plaintiffs and proposed class.

3.      The first system — which is based on Chapter 4 of the United States Sentencing Guidelines' calculation of criminal history points — applies to the vast majority of BOP residents who were sentenced by a federal district court and who enter the BOP with a commitment order, a statement of reasons, and/or a presentence report that lists their Sentencing Guidelines' criminal history points.  For these residents, the BOP simply relies upon their Sentencing Guidelines' criminal history points to determine their criminal history score.

4.      The second system applies to the small minority of BOP residents who do not enter the BOP with a Sentencing Guidelines' criminal history points calculation, including individuals who were sentenced by the Superior Court of the District of Columbia, other state courts, or military tribunals.  *See* U.S. DEP'T OF JUSTICE, FED. BUREAU OF PRISONS, PROGRAM STATEMENT

5100.08: INMATE SECURITY DESIGNATION & CUSTODY CLASSIFICATION ("PS 5100.08") 33 (2006). For those residents, including Plaintiffs and proposed class members, the BOP's Program Statement 5100.08 applies a separate scoring system to tabulate their criminal history points and then converts those points into a criminal history score.

5.      In the overwhelming number of cases, people subject to the second system receive higher criminal history scores than people subject to the first system.  In other words, the BOP's Program Statement 5100.08 yields more criminal history points — and a higher criminal history score — than the criminal history points calculated under the Sentencing Guidelines for similarly situated incarcerated people.

6.      Because the criminal history score is the most significant factor in determining someone's security classification, individuals with higher criminal history scores are more likely to be incarcerated in a high security facility.  As a result of BOP's arbitrary and unequal criminal history scoring system, Plaintiffs and proposed class members are more likely to be incarcerated in high security BOP facilities, where they are subjected to greater violence and offered fewer programming opportunities, and they are denied opportunities to seek release to home confinement that might otherwise be available to them.

7.      Empirical evidence bears this unequal treatment out.  Twelve percent of BOP residents overall are incarcerated in high security institutions, whereas 39 percent of "D.C. Code offenders" are housed in those institutions.  *See* COUNCIL FOR COURT EXCELLENCE, ANALYSIS OF BOP DATA SNAPSHOT FROM JULY 4, 2020 FOR THE DISTRICT TASK FORCE ON JAILS AND JUSTICE 4 (2020),  http://www.courtexcellence.org/uploads/publications/Analysis_of_BOP_Data_Snapshot _from_7420.pdf.  Plaintiffs and proposed class members are three times more likely to be

incarcerated in a high security penitentiary than other BOP residents and could be systematically excluded from seeking release to home confinement.

8.     The BOP's separate scoring system also disproportionately affects its Black residents as 95.6 percent of people who are sentenced by the D.C. Superior Court and who are in BOP custody are Black.  *See* Council for Court Excellence, Analysis of BOP Data Snapshot from July 4, 2020 for the District Task Force on Jails and Justice 2 (2020), http://www.courtexcellence.org/uploads/publications/Analysis_of_BOP_Data_Snapshot_from_7 420.pdf.  By contrast, the majority of individuals sentenced by federal district courts are white.  The BOP tracks the racial composition of individuals in its custody and at individual facilities and is aware of the racial differences between the two populations.  Applying a harsher criminal history scoring system to the majority-Black population of individuals sentenced by the Superior Court for the District of Columbia puts them at a significant disadvantage to their majority-white federal counterparts.  This is doubly concerning because the BOP's own regulations make clear that "staff shall not discriminate against inmates on the basis of race * * * [in] providing access to work, housing and programs."  28 C.F.R. § 551.90.

9.     The BOP's two-tiered system for calculating criminal history scores is arbitrary, capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 501 *et seq.*, and unconstitutional in violation of the Equal Protection Clause of the Fifth Amendment, U.S. Cons. amend. V.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 because it arises under the Constitution and laws of the United States.

11.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. § 2201 and 2202, by 5 U.S.C. § 702, by Federal Rules of Civil Procedure 57 and 65, and by the inherent equitable powers of this Court.

12.     Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to this action occurred, and continue to occur, in this District.

## PARTIES

13.     Plaintiff Jonathan Blades was convicted of D.C. Code offenses and is serving his sentence in the Bureau of Prisons.  Mr. Blades is Black and currently incarcerated at United States Penitentiary (USP) Pollock, a high security penitentiary located in Pollock, Louisiana.

14.     Mr. Blades' criminal history points were assessed under Program Statement 5100.08, and not the U.S. Sentencing Guidelines, because Mr. Blades was sentenced in the Superior Court of the District of Columbia and is serving his sentence in BOP custody.

15.     If Mr. Blades' criminal history points were scored under the Sentencing Guidelines, his criminal history points would be lower than they currently are because the Sentencing Guidelines would not award points for his juvenile probationary sentences or for his 2002 adult probationary sentences that occurred more than 10 years prior to the instant offense.

16.     Plaintiff Antwan Buchanan was convicted of D.C. Code offenses and is serving his sentence in the Bureau of Prisons.  Mr. Buchanan is Black and is currently incarcerated at USP Big Sandy, a high security penitentiary located in Inez, Kentucky.

17.     Mr. Buchanan's criminal history points were assessed under Program Statement 5100.08, and not the Sentencing Guidelines, because Mr. Buchanan was sentenced in the Superior Court of the District of Columbia and is serving his sentence in BOP custody.

18.    If Mr. Buchanan's criminal history points were scored under the Sentencing Guidelines, his criminal history points would be lower than they currently are because the Sentencing Guidelines would not count a 2002 conviction and a 2004 conviction and he would receive fewer criminal history points for his 2006 and 2008 convictions.

19.    Defendant Michael Carvajal is sued in his official capacity as Director, Federal Bureau of Prisons.  In this capacity, Defendant Carvajal oversees the operations of the Federal Bureau of Prisons.

## BACKGROUND

20.    Congress requires the Bureau of Prisons to consider "the history and characteristics of the prisoner" as well as a "prisoner's security designation" when designating prisoners to correctional facilities.  18 U.S.C. § 3621(b).

21.    Pursuant to that statutory requirement, the BOP issued Program Statement 5100.08 in 2006, outlining how the BOP would weigh those factors when designating individuals to prisons across the country.

22.    BOP institutions fall into "five security levels": "MINIMUM, LOW, MEDIUM, HIGH, and ADMINISTRATIVE."  PS 5100.08 at 7.

23.    To designate prisoners into one of those five security levels of institutions, the BOP relies on a set of inputs to "calculate[] a [security] point score for [an] inmate which * * * is then matched with a commensurate security level institution."  PS 5100.08 at 8.

24.    Subject to certain caveats, an individual with a security point score between 0 and 11 security points is matched to a minimum security facility, between 12 and 15 security points to a low security facility, between 16 and 23 security points to a medium security facility, and 24 and over security points to a high security facility.  *See* PS 5100.08 at 8.

6

25.     The BOP relies on a set of established factors to determine the security point score, including "voluntary surrender," the "severity of current offense," "history of violence," "history of escape or attempts," "type of detainer," "age," "education level," "drug and alcohol abuse," and "criminal history score."  PS 5100.08 at 30–38.  To calculate the total security point score, the BOP adds up the points assigned to each of these criteria.  *Id.* at 41.

26.     The BOP explains in Program Statement 5100.08 that the "criminal history score" is "one of the factors used to calculate the inmate's security point total."  PS 5100.08 at 10.

27.     The criminal history score is one of the most influential categories in determining the total security point total.  For example, while the "severity of current offense" category can increase the security point by a maximum of seven points for the "greatest" severity offense, the criminal history score can increase the security point score by ten points — a difference large enough on its own to move a prisoner from a low security facility to a high security facility.  *See* PS 5100.08 at 8, 32–33.

28.     Program Statement 5100.08 establishes two systems for deriving criminal history scores.

29.     The vast majority of prisoners in BOP custody are convicted of federal offenses and sentenced by federal district courts.  For those individuals — referred to here as "individuals with federal sentences" — their "[criminal history score] is derived from the US Sentencing Guidelines Criminal History Points, as reflected in the final judgment and the [statement of reasons].  If not found in either the Judgment or [statement of reasons]," the BOP "use[s] the points assessed by the [United States Probation Office] in the [Presentence Report]."  PS 5100.08 at 33.

30.     The BOP converts the Sentencing Guidelines criminal history points into a criminal history score using the conversion table depicted below.  That criminal history score is then used to determine the security point score.

| Criminal History Points | Criminal History Score |
|---|---|
| 0 to 1 point | 0 |
| 2 to 3 points | 2 |
| 4 to 6 points | 4 |
| 7 to 9 points | 6 |
| 10 to 12 points | 8 |
| 13 or more points | 10 |

PS 5100.08 at 33.  For instance, based on the table above, a person with five criminal history points receives a criminal history score of four.  *See* PS 5100.08 at 33.

31.     For individuals in BOP custody who are sentenced by the D.C. Superior Court[1] — referred to here as "individuals with D.C. sentences" — the BOP applies a different rule set forth in Program Statement 5100.08 to calculate their criminal history points, which is then converted to a criminal history score pursuant to the conversion table in Paragraph 30.  *See* PS 5100.08 at 33.

32.     Unlike individuals with federal sentences, individuals with D.C. sentences do not enter the BOP with "US Sentencing Guidelines Criminal History Points" that are "reflected in the final judgment," a judicial statement of reasons, or a Presentence Report.  PS 5100.08 at 33.

---

[1] Pursuant to the Revitalization Act, nearly all individuals sentenced to felonies by the D.C. Superior Court are immediately transferred to BOP custody to serve out their sentences.  For that reason, individuals with D.C. Code convictions comprise the bulk of individuals affected by the BOP's rudimentary and arbitrary scoring scheme.  Because this lawsuit focuses on the unfair treatment of individuals with D.C. Code convictions, only that group will be referenced throughout the motion.  It is worth noting, however, that the criminal history scoring of individuals serving other state or military tribunal sentences is equally unfair and arbitrary for the same reasons.

33.     Program Statement 5100.08's rule for calculating criminal history points for individuals with D.C. sentences is materially different than the Sentencing Guidelines' criminal history points calculation that the BOP relies on for individuals with federal sentences.

34.     Under Program Statement 5100.08's rule for individuals with D.C. sentences, the BOP does not rely on any previous calculation of criminal history points and undertakes the calculation itself after obtaining an "NCIC III Report," a criminal history report derived from the National Crime Information Center database maintained by the Federal Bureau of Investigation. PS 5100.08 at 33.

35.     After obtaining the NCIC III Report, Program Statement 5100.08 instructs the BOP to calculate the criminal history points for individuals with D.C. sentences as follows:

> a. Add 3 points for each prior sentence of imprisonment exceeding one year and one month;
> b. Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a);
> c. Add 1 point for each prior conviction not counted in (a) or (b), up to a total of 4 points for this item; and,
> d. Add 2 points if the instant offense is a revocation accompanied by a new state or federal conviction, or if the instant offense occurred while under federal supervision including incarceration, probation, parole or supervised release.

PS 5100.08 at 33.

36.     The BOP's calculation of criminal history points under Program Statement 5100.08 is then converted to a criminal history score based on the table depicted in Paragraph 30.

37.     The system the BOP uses to calculate criminal history points for individuals with D.C. sentences results in systematically higher criminal history scores than their similarly situated federal counterparts.  This leads to higher, more restrictive security designations for individuals with D.C. sentences as compared to individuals with federal sentences that have identical criminal histories.

38.     The Sentencing Guidelines generally does not award criminal history points for the following categories of offenses and sentences whereas the BOP's scoring rule contains no such exceptions or limitations:

- a.     Stale offenses and sentences
- b.     Petty offenses
- c.     Juvenile offenses
- d.     Suspended sentences
- e.     Multiple sentences for offenses in the same charging instrument or that were sentenced on the same day

**Stale offenses and sentences**

39.     The U.S. Sentencing Guidelines awards three points for a "prior sentence of imprisonment exceeding one year and one month" that was "imposed within fifteen years of the defendant's commencement of the instant offense." United States Sentencing Commission, Guidelines Manual, §§ 4A1.1(a), 4A1.2(e)(1) (emphasis added).  This includes any sentence "exceeding one year and one month, whenever imposed, that resulted in the [individual] being incarcerated during any part of such fifteen-year period."  *Id*.

40.     In contrast, for individuals with D.C. sentences, the BOP awards three points for "each prior sentence of imprisonment exceeding one year and one month" regardless of when that sentence was imposed, PS 5100.08 at 33.

41.     The U.S. Sentencing Guidelines awards two points for "each prior sentence of imprisonment of at least sixty days not counted in [§4A1.1(a)]," USSG §§ 4A1.1(b), only if that sentence "was imposed within ten years of the defendant's commencement of the instant offense," USSG § 4A1.2(e)(2) (emphasis added).

42.     In contrast, for individuals with D.C. sentences, the BOP awards two points "for each prior sentence of imprisonment of at least sixty days [but not greater than one year and one month]," regardless of when that sentence was imposed.  PS 5100.08 at 33.

10

43.     The U.S. Sentencing Guidelines awards one point for "for each prior sentence not counted in [§ 4A1.1](a) or [§ 4A1.1](b), up to a total of 4 points," USSG § 4A1.1(c), only if that sentence "was imposed within ten years of the defendant's commencement of the instant offense," USSG § 4A1.2(e)(2).

44.     In contrast, for individuals with D.C. sentences, the BOP awards one point "for each prior conviction not [previously] counted * * * up to a total of 4 points for this item," regardless of when that sentence was imposed.  PS 5100.08 at 33.

45.     Consider an individual with a D.C. sentence who committed their "instant offense" on January 1, 2015 and had the following criminal history:

   a.   Two-year prison sentence imposed on January 1, 1980
   b.   Six-month prison sentence imposed on January 1, 1984
   c.   Three-month probationary sentence imposed on January 1, 1986

Under the BOP's rule, that person would receive a total of six criminal history points (three points for the 1980 sentence, two points for the 1984 sentence, and one point for the 1986 sentence) for a criminal history score of four.  *See* PS 5100.08 at 33; *supra* ¶ 35.

46.     A similarly situated individual with a federal sentence who had an identical criminal history and an identical instant offense would receive zero criminal history points — a criminal history score of zero — because each of the three sentences imposed would be considered stale and not count under the Sentencing Guidelines' criminal history points calculation.

47.     Because Program Statement 5100.08's rule does not contain a staleness exception for individuals with D.C. sentences, unlike the Sentencing Guidelines' points calculation for individuals with federal sentences, the BOP's rule systematically results in higher criminal history points and higher criminal history scores for Plaintiff and proposed class members, as compared to similarly situated individuals with federal sentences.

11

**Petty offenses**

48.    The Sentencing Guidelines also limit the types of offenses for which criminal history points are awarded. *See* USSG § 4A1.2(c).

49.    Under the Sentencing Guidelines, certain "prior offenses and offenses similar to them," including "[p]ublic intoxication," "[l]oitering," and "[v]agrancy," are "never counted" in a criminal history score.  USSG § 4A1.2(c)(2).

50.    Under the Sentencing Guidelines, other "prior offenses and offenses similar to them," including "reckless driving," "[t]respassing," "[c]ontempt of court," or "[d]isorderly conduct," are "counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." USSG § 4A1.2(c)(1).

51.    In contrast, for individuals with D.C. sentences, the BOP awards criminal history points regardless of type of prior offense. *See* PS 5100.08 at 33.

52.    For instance, an individual with a D.C. sentence with a prior public intoxication offense would receive criminal history points where as an individual with a federal sentence with a similar prior conviction would not.

53.    Likewise, an individual with a D.C. sentence with an instant drug sale offense and a prior conviction for driving without a license offense for which they received a sentence of 10 days of imprisonment would receive criminal history points, and potentially a higher criminal history score, that a similarly situated individual with a federal sentence would not.

54.    As a result of this material difference in treatment of prior offenses, individuals with D.C. sentences systematically receive higher criminal history points, and therefore higher

criminal history scores, as compared to similarly situated federal counterparts.

**Juvenile offenses**

55.     The U.S. Sentencing Guidelines limit the awarding of criminal history points for prior offenses committed as a juvenile.  *See* USSG § 4A1.2(c).

56.     The Sentencing Guidelines award two criminal history points for each prior juvenile offense that resulted in "confinement of at least sixty days" only when "the defendant was released from such confinement within five years of his commencement of the instant offense." USSG § 4A1.2(d)(2)(A).

57.     The Sentencing Guidelines award one criminal history point for each prior juvenile offense that did not result in confinement of at least sixty days only if the "sentence [was] imposed within five years of the defendant's commencement of the instant offense." USSG § 4A1.2(d)(2)(B).

58.     While the Sentencing Guidelines award criminal history points only for juvenile offenses imposed within a limited period of time, the BOP awards criminal history points for all juvenile offenses without any limitations, *see* PS 5100.08 at 33.

59.     For instance, an individual with a D.C. sentence with a 1995 juvenile sentence that resulted in ninety days' imprisonment will receive two criminal history points, and a higher criminal history score, than a similarly situated individual with a federal sentence.

60.     As a result of this material difference in treatment of juvenile offenses, individuals with D.C. sentences systematically receive higher criminal history points, and potentially higher criminal history scores, as compared to similarly situated federal counterparts.

**Suspended sentences**

61.     The U.S. Sentencing Guidelines award three, two, or one criminal history points for each prior conviction depending on the length of sentence for those convictions.  *See* USSG § 4A1.1(a)-(c).

62.     To determine the length of sentence for prior convictions where "part of a sentence of imprisonment was suspended," the Sentencing Guidelines consider only "the portion that was not suspended."  USSG § 4A1.2(b)(2).

63.     Like the Sentencing Guidelines, for individuals with D.C. sentences, Program Statement 5100.08 also awards three, two, or one criminal history points for each prior conviction depending on the length of sentence for those prior convictions.  *See* PS 5100.08 at 33.

64.     Unlike the Sentencing Guidelines, the BOP considers the total length of sentence of those prior convictions regardless of whether a portion of that sentence was suspended.  *See* PS 5100.08 at 33.

65.     For instance, an individual with a D.C. sentence with a prior sentence of two years' imprisonment, suspended as to all but two months, would receive three criminal history points under Program Statement 5100.08.  By contrast, an individual with a federal sentence with the same prior sentence would receive only one criminal history point, and only if that prior conviction was an applicable offense and did not fall within the staleness exception.

66.     As a result of this material difference in the treatment of suspended sentences, individuals with D.C. sentences systematically receive higher criminal history points, and therefore higher criminal history scores, as compared to similarly situated federal counterparts.

**Multiple sentences for offenses in the same charging instrument or that were sentenced on the same day**

67.     The U.S. Sentencing Guidelines treat certain prior sentences as a single sentence.

68.     Under the Sentencing Guidelines, prior sentences that were not separated by an intervening arrest are counted as one sentence for purposes of calculating criminal history points if they "resulted from offenses contained in the same charging instrument" or if "the sentences were imposed on the same day."  USSG § 4A1.2(a)(2).

69.     By contrast, Program Statement 5100.08 treats all prior sentences as separate sentences for purposes of calculating criminal history points.

70.     For instance, an individual with a D.C. sentence who previously received two concurrent sentences of 24 months' imprisonment for two counts of possession of cocaine charged in the same indictment would receive six criminal history points under Program Statement 5100.08 because each sentence of 24 months would count as three points.  *See* PS 5100.08 at 33.  By contrast, a similarly situated individual with a federal sentence would only receive three criminal history points under the same scenario because the Sentencing Guidelines would treat the two concurrent 24-month sentences as a sentence that "resulted from offenses contained in the same charging instrument."  USSG § 4A1.2(a)(2).

71.     As a result of this material difference in treatment of sentences contained in the same charging instrument or charged on the same day, individuals with D.C. sentences systematically receive higher criminal history points, and therefore higher criminal history scores, as compared to their similarly situated federal counterparts.

72.     In addition to greatly determining security designations, the BOP's criminal history score also plays a significant role in determining a prisoner's PATTERN risk assessment score.

15

73.     The BOP developed a "Risk and Needs Assessment System called the Prisoner Assessment Tool Targeting Estimated Risk and Needs, or simply 'PATTERN.'"  U.S. DEP'T OF JUSTICE, THE FIRST STEP ACT OF 2018: RISK AND NEEDS ASSESSMENT SYSTEM 4 (2019).

74.     A prisoner's PATTERN score has significant effects on their incarceration.

75.     A prisoner who is categorized "minimum or low risk for recidivism * * * over 2 consecutive assessments" earns "an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."  18 U.S.C. § 3621(d)(4)(A)(ii).

76.     A prisoner with a PATTERN score above "a Low or Minimum" is not eligible for home confinement.  Memorandum from Andre Matevousian, Ass't Dir., Corr. Programs Div., Bureau of Prisons, to Chief Exec. Officers (April 13, 2021).

77.     Congress requires that the BOP, "to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted."  18 U.S.C. § 3624(c)(2).

## **FACTS GIVING RISE TO THIS ACTION**

### **Plaintiff Jonathan Blades**

78.     Jonathan Blades was sentenced in docket number 2014 CF1 002153 in the Superior Court of the District of Columbia to a term of incarceration to be served in the BOP on March 20, 2015, for violations of D.C. Code provisions.

79.     Following his sentencing, the BOP prepared a custody classification form for Mr. Blades to determine his security classification score.

80.     As part of the BOP's determination of Mr. Blades' security classification score, the BOP calculated Mr. Blades' criminal history points and resulting criminal history score.

81.     Because Mr. Blades was sentenced by the Superior Court for a D.C. Code offense, the BOP applied Program Statement 5100.08's scoring rule to determine Mr. Blades had **six criminal history points**, which converted to a **criminal history score of four**, *see supra ¶* 30.

82.     Mr. Blades was assessed points under Program Statement 5100.08 that he would not have been assessed under the Sentencing Guidelines.

83.     According to Mr. Blades' presentence report, he has seven prior convictions:

   a.   A 2002 juvenile conviction for carrying a dangerous weapon for which he received probation;

   b.   A 2003 juvenile "Out of Probation" conviction for which he received probation;

   c.   A 2002 adult conviction for possession of marijuana for which he received probation, which was revoked to time served;

   d.   A 2002 adult conviction for distribution of marijuana for which he received a suspended sentence of 180 days imprisonment with 3 years of probation;

   e.   A 2006 adult conviction for reckless driving for which he received 10 days imprisonment;

   f.   A 2006 adult conviction for possession of a controlled substance and driving while intoxicated for which he received a 90-day and 30-day suspended sentence with 12 months of probation;

   g.   A 2006 adult conviction for possession of a prohibited weapon for which he received a 1-year sentence.

84.     Under Program Statement 5100.08's scoring rule, Mr. Blades received six criminal history points.

85.     Mr. Blades likely received one point each for his 2002 and 2003 juvenile convictions (convictions (a) and (b) in paragraph 83) pursuant to subsection (c) of the BOP's criminal history scoring rule: "Add 1 point for each prior conviction not counted in (a) or (b)," PS 5100.08 at 33.

86.     Mr. Blades likely received one point each for his 2002 convictions for possession of marijuana and distribution of marijuana (convictions (c) and (d) in paragraph 83) pursuant to subsection (c) of the BOP's criminal history scoring rule, PS 5100.08 at 33.

87.     Mr. Blades received two points for his 2006 adult conviction for possessing a prohibited weapon (conviction (g) in paragraph 83) pursuant to subsection (b) of the BOP's criminal history scoring rule: "2 points for each prior sentence of imprisonment of at least sixty days" and less than one year and one month, PS 5100.08 at 33.

88.     Had Mr. Blades been scored according to the Sentencing Guidelines' criminal history points calculation, he would only have received **three criminal history points**, resulting in a **criminal history score of two**:

     a.   Mr. Blades would receive one point for his 2006 adult convictions for possessing a controlled substance offense and driving while intoxicated offense (conviction (f) in paragraph 83) because there was no intervening arrest and he was sentenced on the same day for both offenses, *see* USSG § 4A1.2(a)(2).

     b.   Mr. Blades would receive two points for his 2006 adult conviction for possessing a prohibited weapon (conviction (g) in paragraph 83) pursuant to USSG § 4A1.1(b).

89.     Mr. Blades would not have received any points for his two juvenile adjudications. *See* USSG § 4A1.2(d) (excluding juvenile convictions unless they were committed close in time to the instant offense).

90.     Mr. Blades would not have received any points for his 2002 convictions for possession of marijuana and distribution of marijuana. *See* USSG § 4A1.2(e) (excluding convictions that did not result in more than one year and one month of incarceration unless the sentence was imposed "within ten years of the defendant's commencement of the instant offense").

91.     Mr. Blades would not have received any points for his 2006 conviction for reckless driving. *See* USSG § 4A1.2(c) ("reckless driving" not counted unless sentence was a term of imprisonment of at least 30 days or was similar to instant offense).

92.     In part because of Mr. Blades' arbitrarily higher criminal history score, he is being incarcerated in a high security facility (USP) in the BOP.

93.     As a result of his incarceration in a high security facility, Mr. Blades is stigmatized and treated worse than identically situated incarcerated people solely because of the court in which he was convicted.

94.     Mr. Blades has less access to educational and vocational programming at a high security facility compared to people incarcerated at lower security facilities.

95.     Because he is incarcerated at a high security facility, Mr. Blades is afforded fewer liberties than BOP residents at medium or low security facilities, including less time out of his cell, less time outside, and less freedom of movement.

96.     Because he is incarcerated at a high security facility, Mr. Blades has fewer opportunities to speak with his family and his loved ones than BOP residents at medium or low security facilities

97.     Because he is incarcerated at a high security facility, Mr. Blades is subjected to more violence and disciplinary incidents than BOP residents at medium or low security facilities.

98.     Because he is incarcerated at a high security facility, Mr. Blades cannot be considered for release to home confinement.

99.     Mr. Blades is seeking a transfer to a medium or low security facility and is seeking release to home confinement.

100.    Mr. Blades' PATTERN score is also higher than similarly situated BOP residents, meaning that Mr. Blades will earn fewer good time credits, not be eligible for home confinement, and be negatively impacted by an incorrect risk recidivism assessment.

**Plaintiff Antwan Buchanan**

101.    Antwan Buchanan was sentenced in docket number 2016 CF1 016142 in the Superior Court of the District of Columbia to a term of incarceration to be served in the Bureau of Prisons on December 14, 2018, for violations of D.C. Code provisions.

102.    Following his sentence, the BOP prepared a custody classification form for Mr. Buchanan to determine his security classification score.

103.    As part of the BOP's determination of Mr. Buchanan's security classification score, the BOP calculated Mr. Buchanan's criminal history score.

104.    Because Mr. Buchanan was sentenced by the Superior Court for a D.C. Code offense, the BOP applied Program Statement 5100.08's scoring rule to determine Mr. Buchanan had **20 criminal history points**, which converted to a **criminal history score of 10**.

105.    Mr. Buchanan was assessed points under Program Statement 5100.08 that he would not have been assessed under the Sentencing Guidelines.

106.    According to Mr. Buchanan's presentence report, he has six prior convictions:

    a.  A 1992 adult conviction for possession of a firearm during a violent offense for which he received 15 years' imprisonment and a term of probation that expired on December 15, 2013, after several revocations;

    b.  A 2002 adult conviction for possession of marijuana for which he received a time served sentence;

    c.  A 2004 adult conviction for one count of operating a vehicle with a suspended license and one count of operating an unregistered vehicle for which he received a suspended sentence of 90 days of incarceration;

    d.  A 2006 adult conviction for one count of simple assault and two counts of possession of a controlled substance for which he received a sentence of 60 days of incarceration;

    e.  A 2008 adult conviction for one count of aggravated assault and one count of carrying a dangerous weapon for which he received 46 months of incarceration;

    f.  A 2014 adult conviction for possession with intent to distribute marijuana for which he received 15 days incarceration.

107.    Under Program Statement 5100.08's scoring rule, Mr. Buchanan received 20 criminal history points.

108.    Mr. Buchanan received three points for his 1992 adult conviction for possessing a firearm during a violent offense (conviction (a) in paragraph 106) pursuant to subsection (a) of the BOP's criminal history scoring rule: "Add 3 points for each prior sentence of imprisonment exceeding one year and one month," PS 5100.08 at 33.

109.    Mr. Buchanan received one point for his 2002 adult conviction for possession of marijuana (conviction (b) in paragraph 106) pursuant to subsection (c) of the BOP's criminal history scoring rule: "Add 1 point for each prior conviction not counted," PS 5100.08 at 33.

110.    Mr. Buchanan received one point each for the two counts of his 2004 conviction (conviction (c) in paragraph 106) pursuant to subsection (c) of the BOP's criminal history scoring rule.

111.    Mr. Buchanan received a total of five points for his 2006 conviction (conviction (d) in paragraph 106): one point for the simple assault (because he received 45 days imprisonment), and two points each for the possession of a controlled substance counts (because he received 60 days imprisonment each), pursuant to subsections (b) and (c) of the BOP's criminal history scoring rule.

112.    Mr. Buchanan received a total of six points for his 2008 conviction (conviction (e) in paragraph 106): three points for the aggravated assault and three points for the carrying a dangerous weapon counts (because he received more than one year and one month in prison for each count), pursuant to subsection (a) of the BOP's criminal history scoring rule.

113.    Mr. Buchanan might have received an extra point for his 2014 possession with intent to distribute marijuana (conviction (e) in paragraph 106) pursuant to subsection (c) of the BOP's criminal history scoring rule even though he had already reached the total of 4 points that can be awarded under subsection (c), *see* PS 5100.08 at 33 ("Add 1 point for each prior conviction not counted * * * up to a total of 4 points for this item").

114.    Mr. Buchanan received two points because he was under supervision at the time of the instant offense pursuant to subsection (d) of the BOP's criminal history scoring rule, PS 5100.08 at 34.

115. Mr. Buchanan's score under Program Statement 5100.08's criminal history scoring rule should have been 19 criminal history points, but the BOP incorrectly calculated and awarded Mr. Buchanan 20 criminal history points.

116. Had Mr. Buchanan been scored under the Sentencing Guidelines, he would only receive **12 criminal history points**, which converts to a **criminal history score of 8**.

a. Mr. Buchanan would have received three points for his 1992 conviction for possessing a firearm during a violent offense because he was "incarcerated during any part of" the 15-year period before his instant offense. *See* USSG § 4A1.2(e)(1).

b. Mr. Buchanan would have received only two points for his 2006 conviction for one count of simple assault and two counts of possession of a controlled substance because they are part of a single sentence that resulted in a sentence of incarceration of 60 days, *see* USSG § 4A1.2(a)(2).

c. Mr. Buchanan would have received four points for his 2008 conviction for one count of aggravated assault and one count of carrying a dangerous weapon — three points for the carrying a dangerous weapon count, because that count resulted in a sentence of incarceration over one year and one month, *see* USSG §§ 4A1.1(a), 4A1.2(e)(2), and one point for the aggravated assault under the catch-all provision that "[a]dd[s] one point for each prior sentence resulting from a conviction of a crime of violence that did not [already] receive any points * * * because such sentence was treated as a single sentence," USSG § 4A1.1(e).

d. Mr. Buchanan would have received one point for his 2014 conviction for possession with intent to distribute marijuana. *See* USSG § 4A1.1(c).

    e.    Mr. Buchanan would have received two points for committing the instant offense while under supervision.  *See* USSG § 4A1.1(e).

117.    Mr. Buchanan would not receive any points under the Sentencing Guidelines for his 2002 conviction for possession of marijuana because it is outside the Sentencing Guidelines' 10-year look-back period.  *See* USSG § 4A1.2(e)(2).

118.    Mr. Buchanan would not receive any points under the Sentencing Guidelines for his 2004 convictions for one count of operating a vehicle with a suspended license and one count of operating an unregistered vehicle because those convictions are outside the Sentencing Guidelines' ten-year look-back period, *see* USSG § 4A1.2(e)(2).

119.    Mr. Buchanan's criminal history score is unjustifiably higher than what it would be if he were scored under the Sentencing Guidelines and has contributed to his incarceration in a high security USP.

120.    As a result of his incarceration in a high security facility, Mr. Buchanan is stigmatized and treated worse than identically situated incarcerated people solely because of the court in which he was convicted.

121.    Mr. Buchanan has significantly less access to educational and vocational programming at a high security facility compared to people incarcerated at lower security facility.

122.    Mr. Buchanan has sought to enroll in a forklift operation course at his high security facility, but one is not available at that facility while it is available at medium and low security facilities.

123.    Mr. Buchanan is unable to earn as much money at his prison job in his high security facility than he would be if he were held at a medium or low security facility.

124.    Mr. Buchanan has fewer opportunities to speak to his family and loved ones at his high security facility than residents at medium or low security facilities have to speak to their families and loved ones.

125.    Mr. Buchanan has fewer opportunities to leave his cell and to breathe fresh air outside than residents at medium or low security facilities.

126.    Mr. Buchanan is unable to practice his religion to the same extent as residents at a medium or low security facility are able to practice the same religion, in part because high security facilities have fewer chaplains and fewer religious resources than medium or low security facilities.

127.    Mr. Buchanan is seeking transfer to a medium or low security facility and release to home confinement.

128.    Mr. Buchanan's PATTERN score is also higher than similarly situated BOP residents, meaning that Mr. Buchanan will earn fewer good time credits and serve a longer prison sentence than residents whose criminal history scores are calculated under the Sentencing Guidelines.

## **CLASS ALLEGATIONS**

129.    Pursuant to Federal Rule of Civil Procedure 23(b)(1) and (b)(2), Jonathan Blades and Antwan Buchanan bring this action as a class consisting of all people who are or will be convicted of District of Columbia code offenses who were sentenced from the Superior Court of the District of Columbia and who are held in the custody of the Bureau of Prisons.

130.    Plaintiffs reserve the right to amend the class definition or to establish sub-classes as appropriate if discovery or further investigation reveals that the class should be expanded

131.   **Numerosity**: The class is so numerous that joinder is impracticable.  While the precise size of the class is unknown and is constantly changing, Plaintiffs believe that roughly 3,500 people currently fit the class definition, although the composition of the class changes daily.

132.   Joinder of these thousands of people is impractical because the number of unnamed, future class members who will be subject to the challenged policy is unknown and unknowable.

133.   Proposed class members are highly unlikely to file individual suits on their own behalf given the practical, legal, and monetary difficulties that prevent incarcerated people serving sentences in the BOP from accessing independent counsel.

134.   **Commonality**: The claims of the class share common issues of law, including but not limited to whether the challenged policy violates the APA and the Fifth Amendment.

135.   **Typicality**: The claims of Jonathan Blades and Antwan Buchanan are typical of those of the class as a whole because their criminal history points were assessed under the challenged policy and they would receive lower criminal history points, a lower criminal history score, and lower security point score, if they were scored the same as similarly situated BOP residents who were sentenced by a federal district court.

136.   **Adequacy**: Plaintiffs are adequate class representatives who meet all requirements of Rule 23(a)(4).  They have no conflict of interest with other class members and will fairly and adequately protect the interests of the class.

137.   Plaintiffs' counsel will vigorously prosecute the interests of the class, and counsel have experience with the factual and legal issues litigated in this case, as well as with representing plaintiffs in federal civil rights class actions.

138.   Defendant has acted and will act on grounds generally applicable to the class, thereby making final injunctive and declaratory relief appropriate to the class as a whole.  This is

because Defendant's actions were taken pursuant to a policy and practice of the BOP.  A permanent injunction of the policy will therefore benefit all class members.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### ARBITRARY AND CAPRICIOUS ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 500 *ET SEQ.*

139.     The APA requires the "reviewing court" to "hold unlawful and set aside agency action" that is "arbitrary," "capricious," or "an abuse of discretion."  5 U.S.C. § 706(2)(A).

140.     The Federal Bureau of Prisons (BOP) is an "agency" under the APA.  5 U.S.C. § 551(1).

141.     The BOP's criminal history scoring scheme, set forth in Program Statement 5100.08, is final agency action that is reviewable under the APA because it represents the end of the agency's decisionmaking process and creates legal consequences, namely, the increased likelihood of more restrictions on liberty, unconstitutionally disparate treatment and stigmatization, and other harmful effects on Plaintiffs and proposed class members.

142.     Program Statement 5100.08's criminal history scoring rule for individuals sentenced by the Superior Court of the District of Columbia is arbitrary, capricious, and an abuse of discretion because the BOP failed to consider significant disparities between its scheme and the U.S. Sentencing Guideline's scoring rules for individuals with federal sentences.  The BOP also failed to consider how these differences result in systematically higher criminal history scores and security point scores for individuals with D.C. sentences, which contributes to their disproportionate placement in higher security facilities.

143.     The BOP also failed to consider the discriminatory racial impacts of such a policy as the overwhelming majority of individuals sentenced by the D.C. Superior Court are Black, and

the BOP's criminal history scoring rule contributes to these individuals having higher criminal history scores, higher security classifications, and more restrictive housing placements.

144.    Defendants' decision, in the challenged policy, to treat Plaintiffs and proposed class members more harshly than their federal counterparts is arbitrary and capricious.

145.    Defendants' policy causes Plaintiffs and proposed class members injuries because it subjects them to unconstitutional and discriminatory treatment, unduly restricts their liberty, denies them programming opportunities, and subjects them to institutions with greater incidents of violence.

146.    The challenged policy violates the APA because it is arbitrary and capricious and it therefore must be set aside.

**SECOND CLAIM FOR RELIEF**
**ACTION CONTRARY TO LAW, IN VIOLATION OF THE ADMINISTRATIVE**
**PROCEDURE ACT, 5 U.S.C. § 500 *ET SEQ.***

147.    The Administrative Procedure Act requires the "reviewing court" to "hold unlawful and set aside agency action" that is "otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

148.    The BOP's Criminal History Score policy violates the APA because it is "not in accordance with law"—in this case, the BOP's own regulation that it "shall not discriminate against inmates on the basis of race * * * [in] the making of administrative decisions and providing access to work, housing and programs." 28 C.F.R. § 551.90.

149.    The overwhelming number of individuals sentenced by D.C. Superior Court — over 95 percent — are Black.  The BOP closely maintains statistics on the race of its residents and is aware that policies affecting individuals with D.C. sentences would impact a majority Black population.  Therefore, Program Statement 5100.08's criminal history scoring rule — which results in higher criminal history scores and more restrictive housing — disproportionately affects

Black residents in BOP's custody as compared to its majority-white federal population, in violation of the BOP's own anti-discrimination housing regulations.

150.    Because Program Statement 5100.08's criminal history scoring rule violates the BOP's own regulation, it violates the APA's lawfulness requirement and must be set aside.

### THIRD CLAIM FOR RELIEF
### ACTION CONTRARY TO CONSTITUITONAL RIGHT, IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 500 *ET SEQ.*

151.    The Administrative Procedure Act requires the "reviewing court" to "hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

152.    The BOP's Criminal History Score policy violates the APA because it is "contrary to constitutional right"—in this case, the Fifth Amendment's right to equal protection.  This claim incorporates all of the points raised with regards to the Constitutional claim, *see* infra ¶¶ 154–160.

153.    Because Program Statement 5100.08 violates the Fifth Amendment, it also runs afoul of the APA's requirement that rules not conflict with constitutional rights and privileges.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF THE RIGHT TO FAIR AND EQUAL TREATMENT UNDER THE FIFTH AMENDMENT

154.    The Fifth Amendment precludes the federal government from treating similarly situated parties differently for no rational reason.  *See 3883 Connecticut LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003); *Fraternal Order of Police v. United States*, 152 F.3d 998, 1002 (D.C. Cir. 1998) ("Equal protection analysis is substantially identical under the Fifth Amendment and the Fourteenth."), reh'g granted on other grounds, 173 F.3d 898 (D.C. Cir. 1999).

155.    Plaintiffs and proposed class members, who were sentenced to a term of imprisonment by the Superior Court of the District of Columbia, are similarly situated to other BOP residents who were sentenced to a term of imprisonment by any of the federal district courts. By law, individuals "sentenced pursuant to the D.C. Code * * * shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States * * * and the Bureau of Prisons shall be responsible for [their] custody[.]" D.C. Code § 24-101.  Therefore, pursuant to District of Columbia law, individuals sentenced by the Superior Court are intended to be "subject" to the same treatment as individuals sentenced by any of the federal district courts and the BOP is charged with their custody and equal treatment.

156.    There is no rational basis to treat Plaintiffs and proposed class members differently than BOP residents sentenced by federal district courts with regards to housing, programming opportunities, and eligibility for home confinement.

157.    Defendants' policy violates the Fifth Amendment because it treats similarly situated parties disparately without a rational basis to do so.

158.    The BOP acted without rational basis and contrary to equal protection principles when it implemented a policy that significantly and disparately impacted the 95 percent Black population of individuals with D.C. sentences.  By subjecting the majority Black population of individuals with D.C. sentences to a harsher criminal history scoring system, these individuals have systematically higher criminal history scores, higher security classifications, and more restrictive housing placements, than their majority-white federal counterparts.

159.    Because of Defendants' policy, Plaintiff and proposed class are more likely to be designated to higher security level facilities with more rigorous constraints on their liberty, less

30

access to programming and work opportunities, less access to religious services, and more violence.

160.    As a direct and proximate result of Defendants' conduct, Plaintiff and the proposed class have suffered and will continue to suffer harm that is irreparable because the BOP's criminal history scoring rule is controlling and Plaintiff and the proposed class are unable to challenge their criminal history score, security classification, or facility designation in court.

**FIFTH CLAIM FOR RELIEF**
**ACTION WITHOUT OBSERVANCE OF PROCEDURE REQUIRED BY LAW IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 500 *ET SEQ.***

161.    The APA requires the reviewing court "to hold unlawful and set aside" agency action promulgated "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

162.    The APA requires that legislative rules undergo a notice and comment period as part of the rulemaking process.  5 U.S.C. § 553.

163.    The Defendants' criminal history scoring rule (Program Statement 5100.08) is a binding, legislative rule that has the force and effect of law because it provides concrete, controlling, singular guidance for calculating criminal history score, which has a direct and significant impact on security classifications and places of imprisonment.

164.    Defendants did not undergo a notice and comment period when adopting Program Statement 5100.08's criminal history scoring rule, and thus, the public, key stakeholders, including federal and D.C. agencies involved in criminal justice work, and those subject to the rule, could not participate or comment on the rule or its wide-ranging effects.

165.    The challenged policy violates the APA and must be set aside because the BOP did not observe the required notice and comment process before adopting the policy.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Declare that the criminal history scoring rule for individuals with D.C. sentences presented in Program Statement 5100.08, ch. 4, § 8, is:

- An arbitrary and capricious action, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706;

- An action not in accordance with the law, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706;

- An action not in accordance with the Constitution, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706;

- An action promulgated without observance of procedure required by law, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706; and

- Unconstitutional under the Fifth Amendment of the United States Constitution.

b. Vacate and set aside the separate criminal history scoring rule set forth in Program Statement 5100.08, ch. 4, § 8;

c. Grant a preliminary injunction and permanent injunction preventing Defendant, its subordinates, agents, and employees from assessing the criminal history score of individuals sentenced by D.C. Superior Court under the unlawful scheme or from relying on unlawfully tabulated criminal history scores for any purpose, including security classifications and PATTERN assessments;

d. Order Defendant to re-score all class members' criminal history score using the scheme set forth in the U.S. Sentencing Guidelines and to use those new scores to reevaluate security classification levels and PATTERN scores and to take appropriate action based on the updated assessments;

e. Order such other and further relief as this Court deems just and appropriate.

Dated:  February 3, 2022
        Washington, D.C.

                             Respectfully submitted,

                             /s/ Kavya Naini
                             Kavya R. Naini
                             D.D.C. Bar No. D00490
                             Zoé E. Friedland
                             D.D.C. Bar No. D00516

                             Public Defender Service for the District of Columbia
                             633 Indiana Ave. N.W.
                             Washington D.C. 20004
                             (202) 824-2529
                             knaini@pdsdc.org